# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **DELTA MEDIA GROUP, INC.,** | ) | **Case No. 5:07CV01597** |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **JUDGE SARA LIOI** |
| | ) | |
| **vs.** | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| **THE KEE GROUP, INC.,** | ) | |
| **and GREYHOUND** | ) | |
| **TECHNOLOGIES, LTD.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

This matter is before the Court on the motion to dismiss or transfer venue (Doc. No. 10) filed by Defendants The Kee Group, Inc. ("Kee")[1] and Greyhound Technologies, Ltd. ("Greyhound")(collectively "Defendants").

## I. Statement of Facts and Procedural History

Plaintiff Delta Media Group, Inc. ("Delta") is an Ohio corporation. Its principal place of business is located in Stark County, Ohio. (Minard Aff. ¶ 2.) Delta designs and hosts websites and provides internet services to brokers and professionals in the real estate industry. (*Id*. ¶ 3.) Delta publishes internet websites for several leading real estate firms, to which it licenses its proprietary software. Delta's proprietary software includes its own master design

---

[1] According to Kee, it was misnamed in the complaint. The correct business name is M&Z Properties, Inc. d/b/a GMAC Real Estate/The Kee Group. (Defs.' Mot. Dismiss 1.)

website, www.propertypursuit.com, as well as the websites it creates for clients by customizing the master design. (Compl. ¶ 2.) Delta holds Certificates of Registration issued by the U.S. Copyright Office for key components of its master design website. (Compl. ¶ 15.)

Defendant Kee is a real estate business that acts as agent for buyers and sellers of residential real property in the Detroit, Michigan area. (Meeseman Decl. ¶ 1.) Kee contracted with Plaintiff for creation of a customized website. (Minard Aff. ¶ 4.) In 2002, Delta and Kee entered into a licensing agreement (the "Agreement") whereby Delta licensed its proprietary software to Kee. (Minard Aff. ¶ 5.) Delta designed and hosted the customized Kee website (www.gmackee.com) on servers located at Delta's offices in Ohio. (*Id*.) Kee paid a monthly fee to Delta for hosting and supporting the website. (Meeseman Decl. ¶ 3.) Kee grew dissatisfied with Delta's services, and terminated the Agreement on January 1, 2007. (*Id*.)

On or about January 2, 2007, Kee began using a new website. (Minard Aff. ¶ 12.) According to Delta, that website was created by Greyhound. Greyhound is an information technology company providing services to clients in the Detroit, Michigan area. (Avery Decl. ¶ 1.) Delta contends that the new website, www.thekeegroup.net, allegedly created by Greyhound, infringes certain copyrights held by Delta. Specifically, Delta contends that Greyhound copied code and content from the website Delta developed for Kee, and reproduced that code and content on the new website without Delta's permission and in violation of certain provisions of the Agreement and Delta's copyrights. (Compl. ¶ 19.)

Delta filed the complaint in this matter on May 31, 2007, alleging copyright infringement, unfair competition, breach of contract, deceptive trade practice, and trade secret violation. (Doc. No. 1.) Defendants filed the instant motion to dismiss for lack of personal

jurisdiction, or to transfer venue, pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3), respectively. (Doc. No. 10.) Plaintiff filed opposition (Doc. No. 19), and Defendants replied. (Doc. No. 23.) Defendants filed an answer on August 6, 2007, setting forth, *inter alia*, lack of personal jurisdiction and improper venue as defenses. (Doc. No. 16.)

## II. Law and Analysis

### A. Personal Jurisdiction

The plaintiff bears the burden of setting forth a prima facie showing of personal jurisdiction over a defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). On a motion to dismiss pursuant to Rule 12(b)(2), the Court has three procedural alternatives; it may (1) decide the motion on affidavits alone; (2) permit discovery in aid of deciding the motion; or (3) conduct an evidentiary hearing to resolve any apparent factual questions. *Id*. When the Court elects to decide the motion upon the written submissions, it must view the affidavits, pleadings and related documentary evidence in the light most favorable to the plaintiff. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). The Court is not, however, precluded from considering undisputed factual representations of the defendant that are consistent with the representations of the plaintiff. *Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 153 (6th Cir. 1997).

In the complaint, Plaintiff asserts that this Court has both diversity and federal question jurisdiction over this action. Specifically, jurisdiction over Plaintiff's copyright infringement and federal unfair competition claims is based on federal question[2], and jurisdiction over the breach of contract, state law deceptive trade practice, and trade secret violation claims is based on diversity. To assert personal jurisdiction over a defendant, a federal court sitting in

---

[2] Plaintiff alleges copyright infringement in violation of 17 U.S.C. § 106. Plaintiff's unfair competition claims allege violation of the Lanham Act, 15 U.S.C. § 1051 *et seq*.

either diversity or federal question jurisdiction must find that (1) the defendant is amenable to service of process under the forum state's long-arm statute; and (2) exercise of personal jurisdiction would not deny the defendant due process. *See Theunissen*, 935 F.2d at 1459 (diversity); *Bird*, 289 F.3d at 871 (federal question). The Court may, however, begin its inquiry "by examining the relevant Due Process considerations, recognizing that a defect of this type would foreclose the exercise of personal jurisdiction even where a properly construed provision of the long-arm statute would otherwise permit it." *Theunissen*, 935 F.3d at 1459.

**Due Process**

The Due Process inquiry requires determining "whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

Personal jurisdiction exists in two forms: "general" or "specific." *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992). General jurisdiction exists over a defendant when his "contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir.1989). Plaintiff raises no argument that general jurisdiction exists over Kee or Greyhound. Both entities are headquartered in Michigan and do the vast majority, if not the entirety, of their business there. Though Kee, and perhaps Greyhound, maintain internet websites accessible from anywhere, the Sixth Circuit has specifically held that maintenance of

4

such a website "is insufficient to justify general jurisdiction." *Bird*, 289 F.3d at 874 (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419-20 (9th Cir. 1997)).

Specific jurisdiction exists when a plaintiff's claims arise out of or relate to a defendant's contacts with the forum state. *Kerry Steel*, 106 F.3d at 149; *Conti*, 977 F.2d at 981. In *Southern Machine Co. v. Mohasco Industries, Inc.*, the Sixth Circuit established a three-part test for determining whether specific jurisdiction exists, which incorporates the due process concerns of the defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968).

1. Purposeful Availment

The purposeful availment requirement is "the *sine qua non* of *in personam* jurisdiction." *Southern Machine*, 401 F.2d at 381-82. The requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996)(citations omitted). This requirement ensures that a defendant is not haled into a jurisdiction based on random, fortuitous or attenuated contacts, or as the result of unilateral activity of another party or a third person. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)(citations omitted).

5

The purposeful availment analysis regarding Defendant Greyhound is straightforward. Plaintiff does not allege any actions by Greyhound in Ohio. The entire universe of factual jurisdictional allegations against Greyhound consists of Plaintiff's contentions that (1) Greyhound "had to know" that the allegedly infringing material used on Kee's website came from Delta; and (2) Greyhound "had also to know" that using the allegedly infringing material would cause injury to Delta in Ohio.[3] (Pl.'s Opp. 10). Plaintiff offers precisely no evidence to support either contention. Nevertheless, even if true, the Court finds these allegations insufficient to establish purposeful availment by Greyhound in Ohio.

These allegations fail to establish the requisite "substantial connection" between Greyhound and the State of Ohio. Plaintiff's jurisdictional allegations against Greyhound amount to an argument that actions by Greyhound occurring in Michigan caused damage to Plaintiff in Ohio. This is the only connection between Greyhound and Ohio, and it is hardly substantial. Nothing in the complaint, or in Plaintiff's responsive pleadings, provides a basis for concluding that Greyhound reasonably should have anticipated being haled into court in Ohio. Plaintiff fails even to allege facts suggesting knowledge by Greyhound of Plaintiff's Ohio residency. Instead, Plaintiff makes the conclusory allegation that Greyhound had to know that any injury it caused would be felt in Ohio. On that basis alone, Plaintiff would have this Court conclude that Greyhound purposefully availed itself of the privilege of conducting activities in Ohio, or reasonably could anticipate being haled into court here. For this argument, Plaintiff relies on

---

[3] Plaintiff makes a conclusory reference to Greyhound as Kee's "agent" in its Opposition (though not at all in the Complaint). (Pl.'s Opp. 10). Plaintiff does not, however, identify a single fact upon which this alleged agency relationship is based. Nor does Plaintiff make an effort to explain how, if such an agency existed, that fact would support this Court's exercise of jurisdiction over Greyhound. None of the pleadings filed by Plaintiff, even when viewed most favorably to it, offer any support for the existence of an agency between Kee and Greyhound.

*Calder v. Jones*, 465 U.S. 783, 789-90, 103 S.Ct. 1482, 79 L.Ed.2d 804 (1984).[4] This reliance is

misplaced. In *Calder*, the Supreme Court found exercise of jurisdiction proper where the

defendant committed an intentional tort knowing that the plaintiff would be injured. 465 U.S. at

788-89. This is known as the "effects test," which the Sixth Circuit interprets narrowly. *Scotts*

*Co. v. Aventis S.A.*, 145 Fed. Appx. 109, 113 n.1 (6th Cir. 2005). Allegations that a "defendant

expressly aimed its tortious conduct at the forum and plaintiff's forum state was the focus of the

activities of the defendant out of which the suit arises" may be used to enhance a defendant's

contacts for purposes of the minimum contacts analysis.[5] *Id*. Plaintiff proffers no substantive

allegations in this case suggesting that Greyhound expressly aimed its allegedly tortious conduct

at Ohio. "[T]he mere allegation that the plaintiff feels the effect of the defendant's tortious

conduct in the forum because the plaintiff is located there is insufficient to satisfy Calder." *IMO*

*Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998). Allegations of forum-based

injury of the kind made by Plaintiff against Greyhound, standing alone, are insufficient to

---

[4] Plaintiff also relies on *Animation Station Ltd. v. Chicago Bulls, LP*, 992 F.Supp. 382 (S.D.N.Y. 1998). According to Plaintiff, the court in *Animation Station* "found that because the injury that resulted from the defendant's website, which allegedly infringed the plaintiff's contract rights, would largely be felt in the forum state, the defendant could fairly be sued there." (Pl.'s Opp. 14.) *Animation Station* involved a motion to transfer venue from a New York court to an Illinois court. 992 F.Supp. at 383. The New York court did consider briefly whether personal jurisdiction would exist over one of the defendants, a Washington resident, in the transferee forum, and concluded that it would. This conclusion was based on the plaintiff's allegations that the Washington defendant had created an infringing website using the plaintiff's animation regarding the Chicago Bulls basketball team which was very likely to be viewed and downloaded by residents of Illinois. The case did not, however, discuss *Calder* or the effects test. Nor did it examine in-depth any factual allegations of contact by the defendant with Illinois. *Animation Station*, which of course is not binding on this court, is factually distinguishable because Defendant Greyhound, (nor Kee for that matter), is not alleged to have created a website directed toward Ohio residents. By contrast, the allegedly infringing website (which Greyhound is not alleged to own or operate) is directed solely toward Michigan residents. In any event, for the reasons discussed in connection with the *Calder* case, to the extent *Animation Station* can be read to support personal jurisdiction based solely on injury in the forum, the Court concludes that such is not the law this Court is bound to apply.

[5] In *Calder*, a libel action, the defendants' employer published and sold approximately 600,000 copies of the allegedly libelous magazine in the forum state through a local distributing company. *Calder*, 465 U.S. at 785. Accordingly, the nonresident defendants could be charged with knowledge that the harm from the allegedly libelous story would be felt in the state where the plaintiff lived and worked because the magazine's largest circulation was in that forum. *Id*. at 789-90. The defendants' contacts with the forum state, apart from the harm allegedly felt there, were significant.

establish purposeful availment by a defendant not alleged to have had any actual contacts with the forum. *See Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1177-78 (6th Cir. 1992); *Wallace v. Herron*, 778 F.2d 391, 394 (7th Cir. 1985). As the Supreme Court reiterated in a case decided after *Calder*, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King*, 471 U.S. at 474. Defendants rightly point out that acceptance of Plaintiff's "injury only" argument as a sufficient basis for exercise of personal jurisdiction effectively would permit jurisdiction in the home forum of any plaintiff, and would render the deeply-rooted minimum contacts requirement entirely superfluous. Accordingly, the Court concludes that Plaintiff has not made a prima facie case of personal jurisdiction over Greyhound in Ohio.

Defendant Kee's contacts with the forum state stand in rather stark contrast to Greyhound's complete lack of contacts. The intentional act of entering into a contract with a resident of Ohio is sufficient to satisfy the purposeful availment requirement. *Southern Machine*, 401 F.3d at 382-383. Kee negotiated an agreement with Plaintiff, communicated with Plaintiff regarding the agreement, and sent payment to Plaintiff in Ohio.[6] Plaintiff designed the website in Ohio and hosted the site on its servers located in Ohio. Because the agreement was an ongoing contract for services, Kee and Plaintiff communicated regularly over a period of several years, from 2002 to 2006. Furthermore, the *Calder* effects test aids Plaintiff's jurisdictional argument with respect to Kee, because Kee, by virtue of its contacts with Plaintiff in Ohio, knew or had reason to know of Plaintiff's Ohio residency. As a contractual partner with Plaintiff, Kee also

knew or had reason to know that any damages caused to Plaintiff, flowing from a breach of the Agreement or otherwise, would impact Plaintiff in Ohio. Accordingly, the Court concludes that Kee purposefully availed itself of conducting business in Ohio.

2. Forum-Related Activities

"If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe*, 89 F.3d at 1267 (citation omitted). Analysis of this, the second factor, "does not require that the cause of action formally 'arise from' defendant's contacts with the forum; rather, this criterion requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities.'" *Third Nat'l Bank in Nashville*, 882 F.2d at 1091 (quoting *Southern Machine*, 401 F.2d at 384 n. 27).

As stated previously, none of the factual allegations against Greyhound took place in Ohio. Greyhound has never had any employees, assets, bank accounts, advertisements or clients in Ohio. (Avery Decl.) It conducts no business in Ohio. The operative facts of this controversy, as they relate to Greyhound, are that Greyhound used Plaintiff's copyrighted material in creating a website for Kee. Greyhound did this, if at all, in Michigan, not Ohio. The Court therefore finds that Plaintiff cannot establish any connection between Defendant Greyhound's Ohio activities (because none are alleged) and its claims in this case. The conclusion that this action does not arise from Greyhound's contacts with Ohio is, therefore, inescapable.

---

[6] In its brief, Kee states that it "apparently entered into some sort of an agreement" with Plaintiff, and characterizes that agreement as "purported." Defs.' Mot. Dismiss 2. Kee's basis for doing so is unclear, given its apparent concession that it did indeed contract with Plaintiff, notwithstanding the fact that the copy of the agreement attached to the complaint is unsigned. In any event, the Court is compelled at this stage to view the allegations most favorably to Plaintiff.

This action did, however, arise in connection with Kee's Ohio activities. Kee's contacts with the forum state have as their nexus the agreement entered into between Plaintiff and Kee, and the complaint alleges, *inter alia*, breach of the agreement by Kee. It is therefore readily apparent that this action is substantially connected to Kee's Ohio activities. To the extent that the complaint states causes of action in addition to the alleged breach of contract, those claims bear strong relation to Plaintiff's contract claims, and therefore, to Kee's Ohio contacts. The gravamen of the non-contractual claims is the alleged misappropriation by Kee of Plaintiff's proprietary information in the course of creating and disseminating its new website. Kee only had access to such information because of the parties' contractual dealings. The Court finds that the causes of action asserted against Kee bear a substantial connection to Kee's contacts with the forum state.

3. Reasonableness

Having found Plaintiff's contentions regarding Greyhound's purposeful availment and forum-related activities lacking, little effort is required to conclude that exercise of jurisdiction over Greyhound under such circumstances would not be reasonable. Based upon the lack of evidence of contacts between Greyhound and the State of Ohio, the Court finds that exercise of personal jurisdiction over Greyhound indeed would offend traditional notions of fair play and substantial justice.

On the other hand, where the first two prongs of the test are met, an inference arises that the third element is also present. *First Nat'l Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982). Only in an unusual case will the reasonableness element be absent where the first two elements are present. *Id*. This case is by no means unusual,

10

and the Court finds that, because Kee purposefully availed itself of the privilege of acting or causing a consequence in Ohio, and this action is substantially connected to Kee's Ohio contacts, exercise of personal jurisdiction over Kee comports with traditional notions of fair play and substantial justice.

Because the Court concludes that it clearly lacks jurisdiction over Defendant Greyhound, the claims against Greyhound are subject to dismissal, absent a transfer of this action to a district where it could have been brought against Greyhound originally. 28 U.S.C. § 1406(a).  Conversely, the Court concludes that exercise of jurisdiction over Defendant Kee is appropriate under the circumstances. Furthermore, the Court concludes that Kee is amenable to service of process under the Ohio long-arm statute, Ohio Rev. Code § 2307.382. Subsection (A)(1) of the long-arm statute provides for personal jurisdiction over a defendant as to any cause of action arising from the defendant's transacting business in the forum. O.R.C. § 2307.382(A)(1). The phrase "transacting business" has a broader meaning than "contracting," and encompasses prosecuting negotiations, carrying on business, and having dealings. *Ky. Oaks Mall Co. v. Mitchell's Formal Wear*, 53 Ohio St. 3d 73, 75 (1990). Because Plaintiff and Kee entered into a contract, Kee clearly transacted business in Ohio, and therefore is subject to personal jurisdiction under Ohio's long-arm statute.[7] Having reached these disparate conclusions

---

[7] Kee makes the unsupported assertion that "[t]here is absolutely no law that supports the proposition that the mere purchase of services or goods from a company that resides in a different state renders the purchaser subject to personal jurisdiction in that other state." Defs.' Mot. Dismiss 4. Construed as narrowly as possible, this statement may be correct, but Kee did much more than merely purchase goods or services from Plaintiff. Kee negotiated a contract for design and construction of a customized website and for ongoing hosting, support and maintenance thereof. This required extensive communication over a period of years, and entailed Kee's sending payment at regular intervals to Plaintiff in Ohio. Kee's comparison to purchasers of Coca-Cola or Amoco gasoline is so completely inapt as to border on the absurd. No ongoing relationship is formed by purchase of a Coca-Cola, and the purchaser it not required to enter into a contract. No negotiation or communication of any kind with the Coca-Cola Company takes place, and in nearly all conceivable circumstances, payment is made by the purchaser to a third-party retail distributor, not to Coca-Cola directly. This comparison ignores altogether the minimum contacts requirements of the constitutional Due Process analysis.

regarding the propriety of personal jurisdiction over each of the Defendants, the Court turns to considerations of venue.

**B. Transfer of Venue**

Subject matter jurisdiction in this case is based on both federal question and diversity. Venue, therefore, is analyzed under 28 U.S.C. § 1391(b).[8] Where jurisdiction is not founded solely on diversity, a civil action may

> be brought only in: (1) a judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). In cases with multiple defendants, venue must be proper as to every defendant. *IA, Inc. v. Thermacell Tech., Inc.*, 983 F.Supp. 697, 700 (E.D. Mich. 1997).

Subsection (1) obviously will not sustain venue in this matter because neither Defendant resides in Ohio; both are Michigan residents. Accordingly, nor will subsection (3) support venue, because the action could otherwise have been brought in a different district. Under § 1391(b)(2), venue is only proper in this district if "a substantial part of the events or omissions giving rise to the claim occurred" here. While Plaintiff may have a colorable argument that a "substantial part of the events" giving rise to the claims against Kee occurred in Ohio, by virtue of the Agreement, and related correspondence between those parties, no such argument

---

[8] Plaintiff attempts to rely on §§ 1391(b)(1) and (c) for purposes of venue. (Pl.'s Opp. 16.) Section 1391(c) provides that, for venue purposes, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). For the reasons stated *supra*, Greyhound is not subject to personal jurisdiction in Ohio, and therefore venue is inappropriate in this forum under § 1391(b)(1), which allows venue only in a judicial district where any defendant resides, if all defendants reside in the same state. Because Greyhound is not an Ohio resident, all defendants do not reside in this forum, so § 1391(b)(1) is inapplicable.

exists with regard to the claims against Greyhound. As discussed previously, Plaintiff makes no averment that Greyhound engaged in any conduct whatsoever in Ohio. *See Schultz v. Ary*, 175 F.Supp.2d 959, 965 (W.D. Mich. 2001). Accordingly, venue in this district is improper as to Greyhound.

The district court may transfer a case when venue is improper in the original forum if doing so is in the interest of justice. 28 U.S.C. § 1406(a). This may be done even if the district court lacks personal jurisdiction over the defendant.[9] *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). The district court has discretion to decide whether to dismiss or transfer venue pursuant to 28 U.S.C. § 1406(a). *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir. 1998).

Defendants do not dispute that this suit could have been brought originally against both Defendants in the Eastern District of Michigan. Both Defendants are located in Michigan and have significant contacts there. As a matter of fact, both Defendants offer transfer to the Eastern District of Michigan as an alternative to dismissal. (Defs.' Mot. Dismiss 5.) Were the Court to dismiss Greyhound as a party, and Plaintiff then re-filed this case separately against Greyhound in Michigan, two different cases arising from the same set of facts would be proceeding in two different courts. This would be an inefficient use of the parties' resources, and would be contrary to the interests of judicial economy. The factual contentions supporting Plaintiff's copyright infringement, unfair competition, deceptive trade practice, and trade secret violation claims, and, in part, Plaintiff's contract claim, allegedly occurred in Michigan. Furthermore, Michigan offers the only forum for Plaintiff to pursue recourse against Greyhound.

---

[9] This differs from transfer pursuant to 28 U.S.C. § 1404, which does require that the court have personal jurisdiction over the defendant in order to transfer. *See Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993).

Doubts about whether to transfer or dismiss are usually resolved in favor of transfer because the interest of justice generally is better served by transfer. *United Liberty Life Ins. Co. v. Pinnacle West Capital Corp.*, 149 F.R.D. 558, 562 (S.D. Ohio 1993). Under the circumstances, the sensible result is not to dismiss one party defendant without prejudice for lack of jurisdiction, but instead to transfer the entire action to a district where all parties can proceed in the most efficient manner available. *See Schultz*, 175 F.Supp.2d at 966; *see also Medquist MRC, Inc. v. Dayani*, 191 F.R.D. 125, 128 (N.D. Ohio 1999)(district court exercised its discretion to transfer, rather than dismiss, where venue was improper); *Lengacher v. Reno*, 75 F.Supp.2d 515, 519 (E.D. Va. 1999)(same); *United Liberty Life*, 149 F.R.D. at 562 (same). Accordingly, the Court finds that transfer of this action to the Eastern District of Michigan would best serve the interest of justice, and orders the case transferred to that district forthwith.

### III. Conclusion

For the foregoing reasons, this action is **TRANSFERRED** to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1406(a).

**IT IS SO ORDERED**.


Dated:  October 31, 2007                              *s/  Sara Lioi*
                                                      **HONORABLE SARA LIOI**
                                                      **UNITED STATES DISTRICT JUDGE**

14